444 So.2d 1322 (1984)
Mrs. Ronald DUPLECHAIN
v.
Arthur TURNER, Isaac Turner, Individually and d/b/a 5106 Club Partnership, National Security Fire and Casualty Company and Shelly Neveaux.
No. CA-0691.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1984.
Rehearing Denied February 22, 1984.
Writ Denied April 13, 1984.
*1323 Allain F. Hardin, Wiedemann & Fransen, New Orleans, for Mrs. Ronald Duplechain, plaintiff-appellee.
Pamela J. Bayer, Howell & Bayer, New Orleans, for Arthur Turner, Isaac Turner, Individually and d/b/a 5106 Club Partnership, defendants-appellants.
Robert B. Nolan, Rebecca A. Bush, New Orleans, for National Sec. Fire & Cas. Co., defendants-appellees.
Before WARD, SCHOTT and CIACCIO, JJ.
WARD, Judge.
Ronald Duplechain, an off-duty New Orleans police officer, was shot and killed on November 17, 1979, in the 5106 Club, a bar on Claiborne Avenue in New Orleans. That bar is owned and operated by Arthur and Isaac Turner who are brothers and partners. Arthur Turner, a public school teacher during the day, was on duty that night and it was he who shot Officer Duplechain. *1324 The widow of Officer Duplechain sued Arthur and Isaac Turner, their partnership as a separate entity, and their insurer, National Security Fire and Casualty Company, asking damages for his wrongful death.
The Trial Judge held that Arthur Turner was not liable for a battery of Duplechain because his conduct was justified, and that National Security Fire and Casualty Company was not liable because the policy contains a provision which excludes coverage of an insured if he inflicts injuries by an "assault and battery". Nonetheless, the Trial Judge awarded Mrs. Duplechain $90,000 in general and special damages, holding Arthur, Isaac and the partnership liable under a negligence theory because of a breach of duty imposed on bar owners by a criminal statute, La.R.S. 26:88(5).
Arthur and Isaac Turner and the partnership have appealed. Mrs. Duplechain has answered the appeal, asking that we affirm that part of the judgment holding Arthur and Isaac Turner liable; but also asking that we reverse and hold National Security liable as Mr. Turner's insurer, and that we amend the judgment to increase the award of damages. National Security has also answered Mrs. Duplechain's appeal, and it asks that we affirm that part of the judgment in its favor, holding that the policy provisions exclude coverage.
We reverse, and hold that none of the defendants are liable to Mrs. Duplechain.
There is some dispute as to the evidence but after piecing together the testimony of the witnesses the essential facts show that on November 17, 1979, not long after midnight, Officer Duplechain had gone to the Disco 2000 bar where he happened to meet David Beaulieu, an acquaintance of approximately six months and a civilian employee of the New Orleans Police Department. Neither Duplechain nor Beaulieu was in uniform. Duplechain and Beaulieu had two drinks at that bar before going to the Brick Factory Lounge where they had one drink and stayed for an hour. Their next stop was The Famous Disco, and Beaulieu testified they stayed there until 6:00 a.m., or for about three hours, but they had nothing to drink. After leaving the Famous Disco, and while on their way home, they entered the 5106 Club so Duplechain could make a telephone call.
After Duplechain entered the bar and while he was using the telephone, a customer, Shelby Neveaux, began to argue with the barmaid, Esther Ruffins. He had wanted to use a barstool reserved for Ruffins' use and she refused to let him. The argument became heated, Neveaux began cursing Esther Ruffins, and she called to her boyfriend, Gary Marshall, for help. When Marshall approached, Neveaux pulled a gun, cocked the hammer, pointed the gun at Marshall, and Marshall backed off. Duplechain heard most of the argument, saw Neveaux threaten Marshall, and he drew his service revolver and identified himself as a police officer. Instead of surrendering his gun, Neveaux fired at Duplechain, hitting him under his left arm, wounding him, but not severely. Duplechain fired back, wounding Neveaux, and the two exchanged several more shots. Wounded and bleeding, Neveaux fell behind the bar, and Duplechain went after him, leaned over the bar, and again fired at Neveaux. When Arthur Turner entered from the back room, Duplechain had a gun in his hand and was standing near the bar.
Turner had been in the back storeroom counting the night's cash receipts when he first heard the argument between Esther Ruffins and Shelby Neveaux. While he was still in the back room, he heard someone say they were going to shoot up the place, then he heard shots, and almost simultaneously Ruffins came running into the room and told Turner they were shooting up the place. Turner put away his money, picked up his .22 pistol, ran into the bar, and, as he entered the barroom door, a bullet struck the door frame inches away. He saw Duplechain near the bar with a gun, and concluded that he had shot Neveaux who was lying behind the bar on his back. Turner fired three times at Duplechain and killed him.
Ballistics experts examined the pellet that struck the door and concluded it was *1325 from a .38 caliber pistol. Since the pellet was smashed, no other identification was possible, and since both Neveaux and Duplechain had .38's, the experts could not tell from which gun the pellet came.
Some testimony is disputed. Arthur Turner testified as to what he observed and described his state of mind: he thought a robbery was in progress and he believed his life and the lives of his customers and employee's were in danger. In his pre-trial deposition, Turner gave different testimony as to his state of mind, as to where Duplechain was standing, and as to what he observed Duplechain doing. Nonetheless, during trial, Turner testified that when he entered the bar there was chaos. He saw a man he had never seen before standing near the bar, poised, with his gun pointed at Neveaux. He also testified that Duplechain turned in his direction as if he were going to shoot, he thought he was in mortal danger, and he shot Duplechain.
This was contradicted by David Beaulieu, who testified that Duplechain could not have turned towards Turner because Duplechain was still leaning over the bar aiming at Neveaux when Turner shot him. He said Turner gave no warning and he did not give Officer Duplechain an opportunity to drop the gun or to identify himself.
For the purpose of this opinion, we deem it expedient to first review the Trial Judge's finding that Turner was not liable for a battery of Duplechain. In general, a person is criminally responsible and civilly liable for the intentional use of force or violence upon the person of another. Such actions constitute a battery. Nevertheless, conduct which would otherwise be criminal, such as a battery, may be justified. Justification is a defense to a criminal charge, as when a battery is committed for the purpose of preventing a forcible offense against the person or against property in his possession. Nonetheless, to justify the battery, the force or violence used must be reasonable and apparently necessary to prevent the offense. L.S.A.-R.S. 14:18 et seq.
Likewise, conduct which would otherwise be a tortious battery may be justified as self-defense, or in defense of others. When justified, there is no civil liability. Patterson v. Kuntz, 28 So.2d 278 (La.App. Orleans 1946).
When, however, a homicide results, a different and higher standard must be met before the conduct is justified. LSA-R.S. Article 14:20:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; or
(2) When committed, for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm, by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
(3) When committed against a person whom one reasonably believes to be likely to use any unlawful force against a person present in a dwelling or a place of business while committing or attempting to commit a burglary of such dwelling or business. The homicide shall be justifiable even though the person does not retreat from the encounter.
The reporters' notes explain in greater detail:
In order to justify a homicide, as being in self-defense, the person who is attacked must actually believe that he is in imminent danger of losing his life or of receiving serious personal injury. Such a belief must also be a reasonable one. The danger need not be real but the person attacked must reasonably believe that he is in actual danger. Not only must the person attacked reasonably believe that he is in imminent danger, but he must also reasonably believe that it is necessary to kill in order to save himself. *1326 These principles of law are a codification of existing Louisiana jurisprudence. State v. St. Geme, 31 La.Ann. 302 (1879); State v. Sadler, 51 La.Ann. 1397, 26 So. 390 (1899); State v. LeJeune, 116 La. 193, 40 So. 632 (1906).
It has been held that a person's belief that he is in danger of losing his life or receiving serious personal injury is not "reasonable" unless it is founded upon an actual physical attack or hostile demonstration by the deceased. State v. Halliday, 112 La. 846, 36 So. 753 (1904). The same interpretation should be given the "reasonable belief" requirement in this section.
We believe these standards are applicable to civil suits where a death has ensued, as in this case. Nevertheless, even after judging Arthur Turner's conduct by the higher standards, we agree with the Trial Judge: Turner's conduct was justified; he reasonably believed he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save himself. We also believe it was justified because it was done for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm to others, and Turner reasonably believed an offense was about to be committed and that the killing was necessary to prevent it. When he entered the bar, a bullet struck the door frame inches away, Duplechain was standing by the bar with a gun. Neveaux was lying on his back behind the bar, wounded and bleeding and Duplechain was either aiming at Neveaux or had wheeled around to face Turner as he entered. All of this led the Trial Judge to conclude Turner's actions were justified and that he acted reasonably under the circumstances. We therefore believe that the Trial Judge was correct; and that neither Arthur nor Isaac Turner nor the partnership is civilly liable for the battery.
We also believe the Trial Judge was correct when he held National Security was not liable. Their policy excludes coverage for injuries inflicted by "assault and battery". Mrs. Duplechain argues that National Security is liable because Arthur Turner was negligent in erroneously evaluating the situation before he shot, and Duplechain's death was caused by Turner's negligence before the battery, and that National Security as an insurer of negligent acts is liable. We reject this argument. If Arthur Turner had acted unreasonably when he committed the battery, then his conduct would not have been justified, and he would be liable for it. Force or violence was intentionally inflicted, however, thus, a battery occurred and it caused the death. Monk v. Veillon, 312 So.2d 377 (La.App. 3rd Cir.1975). Therefore, the exclusionary provision of the policy is applicable, and National Security is not liable in any event, whether the conduct was justified or not.
Although no litigant considered the point, the Trial Judge, after taking the matter under advisement, found Arthur and Isaac Turner and the partnership negligent because of a violation of a criminal statute, La.R.S. 26:88(5):
No person holding a retail dealer's permit... shall do or permit any of the following acts to be done on or about the licensed premises:
* * * * * *
(5) Permit any disturbance of the peace or obscenity, or any lewd, immoral, or improper entertainment, conduct, or practices on the licensed premises.
We believe the Trial Judge erred. Criminal statutes are not, in and of themselves, determinative of liability. They are merely guidelines to consider in deciding whether a particular conduct violates a duty owed to a particular person. Laird v. Traveler's Insurance Company, 263 La. 199, 267 So.2d 714 (1972). Nonetheless, our analysis must go further, because, although violation of a statute is not negligence per se, the pertinent questions under duty-risk analysis remain and require consideration of the duty Arthur Turner owed to Ronald Duplechain and whether he breached that duty.
We believe Turner owed a duty to Duplechain from harm from employees and other patrons.

*1327 "* * * The proprietor of a public place is not the guarantor of his patrons safety. He owes them the duty to exercise reasonable care to protect them from harm at the hands of a fellow guest or at the hands of his employees...." Anderson v. Clements, 284 So.2d 341 (La.App. 4th Cir.1973).
This means Turner had a duty to protect Duplechain from injury at the hands of Neveaux. Mrs. Duplechain argues that Turner violated his duty to protect bar patrons, and that his failure to act timely to protect them by stopping the fight between Neveaux and Ruffins and Neveaux and Duplechain caused the death of Duplechain. We, however, do not believe Arthur Turner violated that duty. While it is true that he did not react immediately as soon as he heard a loud argument, he had no reason to believe at that time that one patron would harm another. Loud arguments are normal occurrences in bars. As soon as Turner had knowledge that the argument escalated into more than mere words, he acted promptly and reasonably to protect both patrons and employees. When he either heard shots or was informed that patrons were shooting up the place, he grabbed his gun and ran into the bar. There is no evidence to show unreasonable delay or a failure to timely act. Ironically, the unfortunate tragic killing was the result of Turner trying to fulfill his duty to protect his patrons and employees, not because he failed to do so.
We have previously discussed Turner's liability for battery, meaning breach of a duty owed by him not to intentionally harm Duplechain, and we concluded that his conduct was justified and excusable. In fulfilling the additional duty to protect patrons and employees, he was not negligent and he did not violate this duty when he acted in their defense and in his own self defense.
In sum, we believe the Trial Judge was correct when he held Turner was not liable for a battery of Duplechain and that National Security was not liable under the clause excluding damages arising from a battery. We believe, however, the Trial Judge erred when he held Arthur Turner negligent because he violated a statute. We also believe that Arthur Turner did not violate a duty owed to Ronald Duplechain as a patron of the bar.
We therefore reverse the judgment that holds Arthur and Isaac Turner and their partnership liable. We affirm the judgment holding National Security not liable.
All cost of trial and appeal must be paid by plaintiff, Mrs. Duplechain.
REVERSED IN PART, AFFIRMED IN PART.
SCHOTT, J., concurring with reasons.
SCHOTT, Judge, concurring:
I agree with the majority opinion on the question of the liability of Arthur and Isaac Turner and their partnership, but I do not reach the question of National Fire and Casualty Company's liability.
Plaintiff sued National alleging that it insured the other defendants for their liability in this case. The Turners filed a third party demand against National seeking reimbursement and indemnity in the event of a judgment against them. The trial court rendered judgment in favor of plaintiff against the Turners but found no coverage under National's policy. The Turners appealed, thereby preserving the issue of National's coverage, and plaintiff took her own appeal from the dismissal of her claim against National.
Once we conclude that the Turners are not liable to plaintiff, the question of National's liability to plaintiff and its obligation to the Turners under the policy for reimbursement and indemnification becomes moot and the troublesome coverage question need not be addressed.
I have considered whether the question of National's obligation to defend the Turners (separate from its obligation to indemnify) is properly before us and conclude that it is not. In the body of their third party demand the Turners speak only of entitlement to reimbursement and indemnity from National in the event plaintiff secures judgment against them. They do not allege that they tendered their defense *1328 to National, that National refused to defend them, and what costs they incurred in their own defense. At the trial of the case they put on no evidence of their costs to defend. In their briefs to this court they limited their arguments to indemnity, omitting any reference to a duty on National's part to defend.
In the prayer of their third party demand the Turners do include after their prayer for indemnity in the event they are cast in judgment to plaintiff a prayer for "reasonable attorney's fees to be fixed by [the trial court]," but I do not consider this as sufficient to warrant our addressing the issue of National's duty to defend considering the totality of their pleadings, their evidence at trial, and their briefs to this court.