EDWARDS, Judge.
On December 8, 1990, Vernon Paul Kaufman fired a shot, from a .38 caliber pistol, which struck and killed Kirkland Westmore. Westmore’s parents, Judia and Issac West-more, filed this wrongful death action naming as defendants, Vernon Paul Kaufman and Allstate Insurance Company, the homeowners insurer of Kaufman’s parents, James and Verna Banks. Allstate moved for and was granted summary judgment in its favor on the basis of an exclusionary provision in the policy barring coverage for intentional acts of an insured. The plaintiffs appeal, arguing that the “intent” of Vernon Paul Kaufman is a material fact as to which there is genuine issue, and therefore, summary judgment was improper. After a thorough review of the record and pertinent jurisprudence, we find no error below and accordingly, affirm.
In support of its motion for summary judgment, Allstate filed the following exhibits: a copy of the homeowners policy insuring James and Verna Banks; a copy of the depositions of Vernon Paul Kaufman, Edward Douglas (one of the decedent’s companions on the night of the shooting), and Detective Eddie Stewart; and a certified copy of the sentencing transcript of Vernon Paul Kaufman in the criminal proceeding against him. These exhibits establish the following facts.
On December 8, 1990, Vernon Paul Kaufman, together with some friends, traveled from their homes in East Baton Rouge to attend a basketball game and a school dance at Jackson High School, in Jackson, La. They took two cars; Kaufman drove one with two other passengers and Timothy Hull drove the other, with Oaton Armwood and another passenger. Prior to leaving, Kaufman got a .38 caliber pistol from Timothy Hull and brought it with him in his car. Timothy Hull and his passengers armed themselves with a shotgun and a rifle. The testimony established that Kaufman’s friends and “some guys from Jackson” had “a few words exchanged over the telephone” earlier that day, and the men anticipated the possibility of some trouble if they went to the basketball game and dance. The men arrived at Jackson High School after the basketball | -¡game ended, and they proceeded to go to the dance in the school’s cafeteria. When the dance was over, the men went to their vehicles and began to leave the parking lot. As they were leaving, a vehicle driven by the decedent pulled up alongside of Kaufman’s vehicle. The decedent and one of his passengers, Kendell Dunn, got out of their vehicle and approached Vernon Kaufman’s vehicle, inquiring the whereabouts of Oaten Armwood (one of Kaufman’s friends who was in Timothy Hull’s vehicle, directly behind the Kaufman vehicle). According to Kaufman, words and threats were exchanged. The decedent and his friend started to walk away from Kaufman’s car and toward Timothy Hull’s car, when Kaufman grabbed the pistol, stuck it out of his ear window, and fired it into the air. According to Kaufman, the decedent and his friend started to run toward decedent’s vehicle. One of Kaufman’s friends stated that he had seen someone in the decedent’s vehicle armed with a gun. At that point, Kaufman fired a second shot, in his own words: “towards Westmore’s car.” This was the shot which struck and killed Westmore. After the second shot was fired, Kaufman and his friends left Jackson High School. Kaufman was subsequently arrested and charged with second degree murder; he ultimately entered a guilty plea to the reduced charge of manslaughter.
During his deposition, Kaufman admitted that he fired both shots. He admitted that he shot the first shot into the air, and that he *1201 fired the second shot “towards Westmore’s car.” He further admitted that he saw both men run toward the Westmore vehicle after the first shot. However, he stated that he did not intend to hit Westmore or anyone else, but rather, that he was just trying to scare the men away and buy time in which to start his car and drive away.
The Allstate homeowners insurance policy filed in support of the motion contains the following pertinent exclusion:
Losses We Do Not Cover:
1. We do not cover bodily injury or property damage resulting from:
a) An act or omission intended or expected to cause bodily injury or property damage. This exclusion applies even if the bodily injury or uproperty damage is of a different kind or degree, or is sustained by a different person or property, than that intended or expected; ...
The trial court found that Kaufman’s act of shooting the pistol toward Westmore’s car was an intentional act within the scope of the policy’s exclusion, and granted Allstate’s motion for summary judgment on that basis. The plaintiffs/appellants maintain that the issue of Kaufman’s intent is a question of material fact and that summary judgment is therefore, improper. We disagree.
We are aware that summary procedure should be used cautiously and sparingly. We are also aware that summary judgment is rarely appropriate for a determination based on subjective facts, such as intent. See Penalber v. Blount, 550 So.2d 577, 583 (La.1989). However, our courts have consistently held that the aggressive act of pulling a loaded gun and firing it at a party, in and of itself, supports the conclusion that the defen-danVinsured intended the resulting injuries because such consequences are almost certain to occur as a result of such actions. Cavin v. Elliot, 597 So.2d 1255, 1257 (La. App. 3rd Cir.1992) (citing Monk v. Veillon, 312 So.2d 377 (La.App. 3rd Cir.1975); Tobin v. Williams, 396 So.2d 562 (La.App. 3rd Cir.1981); Vascocu v. Singletary, 434 So.2d 597 (La.App. 3rd Cir.1983); Barton v. Allstate Insurance Co., 527 So.2d 524 (La.App. 3rd Cir.1988), writ denied, 532 So.2d 157 (La.1988); Brasseaux v. Girouard, 269 So.2d 590 (La.App. 3rd Cir.1972), writ denied, 271 So.2d 262 (La.1973); Freeman v. Bell, 366 So.2d 197 (La.App. 2nd Cir.1978), writ denied, 369 So.2d 151 (La.1979)).
In this particular case, the insured (Kaufman), by his own admission, committed an intentional act within the scope of the exclusion. He stated that he intended to fire the pistol both times. The first time, he intended to fire into the air; the second time he intended to fire “towards Westmore’s car,” where he knew the two men were headed. Furthermore, the policy language in this particular case is broader in scope than most; it excludes coverage for bodily injury of a different kind or degree than that intended or expected. In its oral reasons for granting the summary | judgment, the trial court stated, “[i]t is hard to conclude anything other than when you point a pistol or a loaded gun at or near an area where other people are located and you pull the trigger and intentionally discharge a weapon, that have got to understand that a reasonable consequence of that action is that someone is going to be hit with that bullet. I can’t see any other conclusion.” We agree with this conclusion, and it comports with the jurisprudence. Therefore, while summary judgment is rarely appropriate for determining intent, if there are no genuine issues regarding the presence of that intent, then summary judgment is proper. The particular circumstances of this case leave no doubt as to the intent of Kaufman in firing the pistol. The policy language at issue excludes such intentional act from coverage. Therefore, this is one such case where summary judgment is proper. Accordingly, the judgment of the trial court is affirmed; the plaintiffs/appellants are assessed all costs of this appeal.
AFFIRMED.