675 So.2d 837 (1996)
Thomas J. OSBORNE, Jr. and Phyllis Osborne,
v.
VULCAN FOUNDRY, INC., Board of Commissioners, Port of New Orleans, and New Orleans Dock Board.
No. 95-CA-2766.
Court of Appeal of Louisiana, Fourth Circuit.
May 29, 1996.
*839 Robert J. Caluda, New Orleans, and S. Michael Cashio, Kenner, for Plaintiffs/Appellants.
Michael M. Noonan, Patrick J. O'Cain, McGlinchey Stafford & Lang, New Orleans, for Defendant/Appellee, Vulcan Foundry, Inc.
Before BYRNES, ARMSTRONG and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Thomas Osborne, Jr. and Phyllis Osborne sued Vulcan Foundry, Inc. (Vulcan), and the Board of Commissioners, Port of New Orleans, also known as the New Orleans Dock Board (Dock Board) for damages arising out of injuries allegedly sustained by Mr. Osborne. Mr. Osborne claims that as he drove a front loader over a grate manufactured by Vulcan, installed on Dock Board property located at Berth # 6 on the New Orleans riverfront, the grate broke beneath the weight of the loader and Mr. Osborne was thrown around, suffering a back injury. The Osbornes claim that the Dock Board was negligent in its choice of a "traffic grade" rather than "airport grade" grate, and in its installation and maintenance of the grate; they claim that Vulcan manufactured a defective grating and failed to warn the purchaser of the limitations on the weight the grate could sustain.
On 22 June 1995 the trial court granted Vulcan's motion for Summary Judgment dismissing the Osbornes' petition against that defendant. From that judgment, the Osbornes appeal. We reverse and remand for trial on the merits.

STATEMENT OF FACTS
In support of its Motion for Summary Judgment, Vulcan relies on the following allegedly uncontested material facts:
1. This suit arises out of an accident that happened in October of 1986, when a loader operated by Mr. Osborne broke a metal grate on property owned by the Dock Board and leased by Mr. Osborne's employer.
2. The pieces of the grate that broke were lost after the accident and remain lost.
3. There is no evidence that a manufacturing or design defect caused the grate to fail.[1]
4. The grate was a medium or traffic duty grate.
5. Such a grate is insufficient to withstand the loads that would be imposed on it by machinery like that involved in this accident.
6. The purchaser of the grate or designer of the facility was in the best position to know what kind of activity would be conducted there.
7. The purchaser and designer were sophisticated entities who knew or should have known the load capacities of a traffic duty grate.
8. No evidence suggests that the purchaser or designer asked Vulcan the load capacity of a traffic duty grate.
9. Vulcan could not have known the grate would be put to uses for which it was never intended.
*840 The mover and opponent submitted deposition testimony in support of their respective positions. Andrew McPhate, an expert familiar with the Louisiana foundry industry, testified that a grate manufacturer has an independent duty to consult with its purchasers regarding the ultimate use of its grating material, in the sense that the manufacturer must guarantee a certain load carrying capacity and communicate that information. He also testified that sellers in the foundry business customarily consult with purchasers concerning the use to which the products will be put. He testified that the designer of the installation chooses the components to meet the design goals of the facility, that the designers were supposed to be sophisticated people, and that the designer should determine the load bearing capacity of a grate used in its installation. McPhate testified further that the grating that failed definitely should not have been used in the area where the accident took place, and that a front loader, whether loaded or empty, would be too heavy a load for a traffic grade grate.
James Patton, Vulcan's foundry manager, testified that neither the Vulcan catalog, which was supplied to purchasers, nor the Material Safety Data Sheet, which may have been supplied to the purchaser, contain load ratings for any of Vulcan's three types of gratings. He testified that Vulcan uses three terms for its three grades of grates: "standard", "traffic" and "airport." The difference between an airport grating and a traffic grating lies in the type of iron from which the grate is made, the physical size and dimensions of the piece. From photographs of the area, he identified the grating in question as traffic grating. He testified that Vulcan normally sends catalogs to prospective purchasers, containing a discussion of the three types of grating, but without specific load capacities by product.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180, 1182; Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). A summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B).
A fact is material if it is essential to a plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4th Cir.1992), writ not considered 613 So.2d 986 (La.1993). Despite the presence of disputed facts, summary judgment will be granted as a matter of law if the contested facts present no legal issues. Davenport v. Amax Nickel, Inc., 569 So.2d 23, 27 (La.App. 4 Cir.1990), writ denied 572 So.2d 68 (La.1991).
In Dibos v. Bill Watson Ford, Inc., 622 So.2d 677, 680 (La.App. 4 Cir.1993), this Court held:
To satisfy his burden, the party moving for the summary judgment must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981).
All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion. Carr v. City of New Orleans, 622 So.2d 819, 822 (La.App. 4 Cir.1993), writ denied 629 So.2d 404 (La.1993). The papers supporting the position for the party moving for the summary judgment are to be closely scrutinized while the opposing papers are to be indulgently treated, in determining whether mover has satisfied his burden. Vermilion, supra. Where the trial court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits and attached exhibits, reasonable inferences must be viewed in the light most *841 favorable to the party opposing the motion. Duvalle v. Lake Kenilworth, Inc. 396 So.2d 1268 (La.1981).
FIRST ASSIGNMENT OF ERROR: The trial court erred in granting summary judgment without allowing a jury to determine if the Port of New Orleans is a "sophisticated user."
The Louisiana Supreme Court held in Hines v. Remington Arms Company, Inc., 94-0455 (La. 12/8/94), 648 So.2d 331, 337, that a manufacturer has a duty to provide an adequate warning of dangers inherent in the normal use of its product not within the knowledge of or obvious to the ordinary user. This duty does not encompass dangers that are or should be obvious to the ordinary user, particularly when the user is familiar with the product, making him a "sophisticated user." In that case, arising out of a gunpowder explosion, the court found there was no need to warn plaintiff, who was already familiar with guns and ammunition, of the inherent danger of gunpowder or of safer methods of storage. The court said, "The danger presented by gunpowder is its high degree of flammability, the very essence of its usefulness. This danger is obvious, particularly to a sophisticated user like Mr. Hines." The court upheld the trial court's discretion in refusing to allow plaintiff to present to the jury evidence of failure to warn, finding there was no duty to warn this plaintiff.
Vulcan claims that the Osbornes cannot succeed on a failure to warn claim because the Dock Board is a "sophisticated user", who is not entitled to a warning concerning the load-bearing limits of Vulcan's grates.
A motion for summary judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts, e.g., motive, intent, good faith, and knowledge. Jefferson Parish School Bd. v. Rowley Co., Inc., 305 So.2d 658, 663 (La.App. 4 Cir.1974); Butler v. Travelers Ins. Co., 233 So.2d 271 (La.App. 1 Cir.1970). The "sophisticated user" issue is, by its nature, one of actual or expected knowledge on the part of the purchaser/user. This Court allowed resolution of the issue on summary judgment in Ferruzzi, U.S.A., Inc. v. R.J. Tricon Co., Inc., 93-1591 (La.App. 4 Cir. 9/29/94), 645 So.2d 685, 688. There, plaintiff claimed that instructions provided by the manufacturer to the purchaser, an elevator designer/manufacturer, were insufficient. This Court held:
These instructions contain information on the recommended wrench torque, as well as a warning that the bushings and capscrews should be rechecked for proper torquing at least once per week for the first month and periodically thereafter. We find, as did the trial judge, that the instructions/warnings provided by Browning were more than adequate, especially for Essmueller, a sophisticated user.
This Court recognized a limitation to the "sophisticated user" defense in a summary judgment context in Black v. Gorman-Rupp, 94-1494 (La.App. 4 Cir. 5/16/95), 655 So.2d 717:
[W]e believe that there are genuine issues of material fact as to the relevant "sophistication" of both T.L. James [purchaser of the pump in question] and Mr. Black [James' injured employee]. It has not been established that the pump in question is of a type invariably used only by specialists or experts. As to T.L. James, all that has been established is that it is a construction company and that it previously had purchased two of the type of pump at issue. What T.L. James actually knew about the pump, and specifically what it knew about proper "mounting" or "securing" of the pump, has not been established. As to Mr. Black, it appears that he was a laborer, although even that has not really been established and it certainly has not been established that he knew anything about the proper "mounting" or "securing" of the pump. There simply is not yet enough information to say that there are no genuine issues of material fact as to the "sophisticated user" defense.
In the instant case, the deposition record is clear that neither the Vulcan catalog nor the Material Safety Data Sheet contain load-bearing weight information for the various classes of grates. While the Dock Board may be a sophisticated user of grates, it has no way of knowing the specific load limits of the various grades of grates without being informed of their capacities by their manufacturer. Ferruzzi and Hines stand for the proposition that the type of information that *842 adequately warns a sophisticated user might not be adequate for an ordinary user. These cases do not support a finding that the manufacturer may withhold information that even a sophisticated user needs to make an informed decision as to which grade of grate will have sufficient load bearing capacity for the use to which it is to be put. Genuine issues of material fact remain, not only as to whether the Dock Board knew the load capacity of each of the three levels of Vulcan grates, but also whether Mr. Osborne had reason to know that his vehicle exceeded the capacity of the grate over which he drove the front-loader. Further, in this case the allegation is that Vulcan produced no information at all concerning respective load capacities of its products, not merely that the information was insufficient. It is noteworthy that Vulcan chose to denominate its grades "standard", "traffic", and "airport." The trier of fact may conclude that Vulcan lulled its purchasers into a belief that by moving up from the "standard" grade to a "traffic grade," relatively heavy machinery such as Mr. Osborne's front-loader could be accommodated, particularly when the next upgrade would be to the "airport" category, which conjures up images of jumbo jetliners rather than fork-lift trucks. Even a sophisticated user might be found to have determined, without specific load capacity information, that the traffic grade was adequate for any uses short equipment loads short of an airplane. These issues of material fact are not to be resolved by summary judgment.
SECOND AND FIFTH ASSIGNMENTS OF ERROR: The trial court erred in granting summary judgment without allowing a jury to determine if Vulcan acted in a reasonably prudent manner and in finding no contested genuine issues of material fact particularly with regard to whether or not Vulcan's failure to place load bearing limits in its catalog descriptions or to consult with purchasers rendered this product defective because of Vulcan's failure to warn.
A motion for a summary judgment is not to be used as a substitute for trial on the merits. Oller v. Sharp Elec., Inc., 451 So.2d 1235, 1237 (La.App. 4th Cir. 1984), writ denied 457 So.2d 1194 (La.1984). It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Morris v. Louisiana Coca-Cola Bottling Co., Ltd., 354 So.2d 659 (La.App. 1 Cir.1977). The weighing of conflicting evidence on a material fact has no place in summary judgment procedure. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3 Cir.1974), application denied 302 So.2d 308 (La.1974). Making evaluations of credibility has no place in determining a summary judgment. Dixie Buick, Inc. v. Lockett, 263 So.2d 56 (La.App. 4 Cir.1972); Hemphill v. Strain, 341 So.2d 1186 (La.App. 1 Cir.1976), application denied 343 So.2d 1072 (La.1977).
The jury is the proper agency to determine whether the information given by Vulcan to the Dock Board was that which a reasonably prudent manufacturer would give to intended purchasers.[2] As noted in the discussion of the First, Second and Fifth Assignments of Error, substantial issues of material fact concerning the Dock Board's knowledge of load limits remain to be resolved by the trier of fact.
THIRD AND FOURTH ASSIGNMENTS OF ERROR: The trial court erred in granting summary judgment without allowing a jury to hear Professor McPhate's expert testimony regarding the custom in the foundry industry of providing load bearing capacity specifications and in finding that the manufacturer of a grating has no duty to warn or to inform the ultimate user of the strength and load bearing capacity of the grating.
The Louisiana duty/risk analysis was set forth in Roberts v. Benoit, 605 So.2d 1032 (La.1991), rehearing granted, on rehearing (La.1992). In order to prevail on a negligence claim under La.C.C. arts. 2315 and *843 2316 a plaintiff must prove five separate elements, among which is that the defendant had a duty to conform his conduct to a specific standard (the duty element).
The question of whether a duty exists in a particular set of circumstances is a question of law for the court to decide. Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94), 646 So.2d 318, 321-322. Simply put, the inquiry is whether the plaintiff has any lawstatutory, jurisprudential or arising from general principles of faultto support his claim. Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La. 1993).
The scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. Rules of conduct are designed to protect some persons under some circumstances against some risks. The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner.... In determining the limitation to be placed on liability for defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced." Faucheaux, 615 So.2d at 293-294.
The critical test in the present context is phrased in terms of the "ease of association" which melds policy and foreseeability into one inquiry: Is the harm which befell the plaintiff easily associated with the type of conduct engaged in by the defendant?
Andrew McPhate testified in deposition that he is familiar with the standards and customs of the Louisiana iron gratings manufacturing industry. According to McPhate, the manufacturer of a grate has an independent duty to consult with its purchasers regarding the ultimate use of its grating material, in the sense that the manufacturer must guarantee a certain load carrying capacity, and has a duty to communicate that information. McPhate testified that it is "critical" that the load carrying capacity be communicated by the manufacturer to the purchaser. He also testified that it is customary in the industry for manufacturer and purchaser to consult concerning the use to which the product will be put. While adherence to custom may not in every case exonerate a party from a negligence claim, deviation from custom may, in the appropriate case, constitute evidence of fault. See Buras v. United Gas Pipeline Company, 598 So.2d 397, 402 (La.App. 4 Cir.1992), writ denied 605 So.2d 1147 (La.1992); Pennington v. Justiss-Mears Oil Co., Inc., 123 So.2d 625 (La.App. 1 Cir.1960), judgment amended as to quantum by 242 La. 1, 134 So.2d 53 (1961).
Clearly one may easily associate the risk of precisely the harm allegedly suffered by Mr. Osborne with Vulcan's failure to disclose to the Dock Board the load capacity of Vulcan's grates. The risk is easily associated with the customary duty testified to by McPhate, and is foreseeable to the manufacturer. The factual issue of whether Vulcan violated the duty should be resolved by the trier of fact, not by the trial court on summary judgment.

CONCLUSION AND DECREE
We conclude that the existence of genuine issues of material fact makes the trial court's summary judgment inappropriate. The judgment is reversed and the matter remanded for trial on the merits.
REVERSED AND REMANDED.
NOTES
[1] Plaintiff's expert, Andrew McPhate, testified that he had no evidence that would allow him to conclude that there was any manufacturing flaw or design defect in the grate. Courtney Busch, the Dock Board's expert, testified that had there been a latent defect in construction, the grate would have failed earlier in the six to eight years prior to the accident that it had been in use.
[2] The relative obligations of the manufacturer to provide load capacity and of the purchaser to ascertain that the grate it intended to purchase had sufficient capacity for its intended use is a matter for the trier of fact.