726 So.2d 1120 (1999)
Lucillia Montigue HEWITT
v.
ALLSTATE INSURANCE COMPANY, Melvin Corley and Cynthia Corley.
No. 98-CA-0221
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 1999.
Louis A. Gerdes Jr., New Orleans, Louisiana, Counsel for Plaintiff/Appellant.
Christopher E. Lawler, Joseph F. d'Aquin, III, Donovan & Lawler, Metairie, Louisiana, Counsel for Defendant/Appellee.
Court composed of Judge WILLIAMS H. BYRNES III, Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, Judge MIRIAM WALTZER, Judge JAMES A. McKAY III.
PLOTKIN, Judge.
Plaintiff Lucillia Montigue Hewitt appeals the trial court's granting of summary judgment in favor of defendant Allstate Insurance Co. The trial court judgment was based on a finding that the homeowner's liability policy issued to defendants Melvin and Cynthia Corley (hereinafter "the Corleys") excludes coverage for damages sustained by Ms. Hewitt when her minor son, Jamar Montigue, was shot and killed by the Corleys minor son, Jeremie Corley. We affirm.
Ms. Hewitt's petition made the following factual allegations:
3
That on or about August 21, 1993 petitioner's deceased son, JAMAR MONTIGUE, and defendants' minor son, JEREMIE CORLEY, and several other kids had been standing around conversing and teasing each other all day; that at sometime during that day, JEREMIE CORLEY, went home to get something to eat and drink; at that time he retrieved a gun from his house that had been given to him some weeks earlier by some kids for protection; that JEREMIE COLEY [sic] retrieved the weapon with no intentions of using it, but rather for display; that when JEREMIE CORLEY returned to the vicinity where JAMAR MONTIGUE and the other kids were, the teasing reoccurred; at some point, JEREMIE COLEY saw JAMAR MONTIGUE reach into his pocket and out of fear he fired his weapon fatally wounding JAMAR MONTIGUE.

*1121 4
That at all times mentioned above, the said minor, JEREMIE CORLEY, was under the direct supervision and control, and in the custody of defendants, MELVIN CORLEY and CYNTHIA CORLEY.
5
That the said accident was caused solely by the intentional action of defendants' MELVIN CORLEY and CYNTHIA CORLEY [sic] minor son, JEREMIE CORLEY, which negligence is more particularly described as follows: JEREMIE CORLEY:
a. Failure to act in a reasonable manner;
b. Failure to abide by the laws of the City of New Orleans, State of Louisiana;
c. Failure to confide in his parents;
d. Negligent in carrying an illegal weapon;
e. All other acts of negligence which may be proven at or prior to the trial of this matter.
MELVIN CORLEY AND CYNTHIA CORLEY:
a. Failure to adequately supervise their minor son;
b. Negligent in allowing their minor son to carry an illegal weapon;
c. Failure to properly discipline their son;
d. Failure to carry out their parental duties;
e. All other acts of negligence which may be proven at or prior to the trial of this matter. all in violation of the laws of the State of Louisiana and the ordinances of the Parish of Orleans, which are specifically pleaded as if set forth in full herein.
(Emphasis in original.)
Allstate was named in the petition as the Corleys' insurer.
Allstate filed a motion for summary judgment, to which it attached the policy it issued to the Corleys and Jeremie Corley's deposition, in which he testified that he intentionally shot Jamar Montique two or three times because he felt threatened when Jamar Montique, who was not armed, reached into his pocket. Allstate relied on the intentional act exclusion of the policy, which provides in pertinent part, as follows:
LOSSES WE DO NOT COVER:
1. We do not cover bodily injury or property damage resulting from:
a) An act or omission intended or expected to cause bodily injury or property damage. This exclusion applies even if the bodily injury or property damage is of a different kind or degree, or is sustained by a different person or property, than that intended or expected;...
(Emphasis added.)
Ms. Hewitt failed to file any depositions, affidavits, or other evidence in opposition to the motion for summary judgment. The trial court granted the motion for summary judgment. Ms. Hewitt appeals.
This court reviews summary judgment de novo, considering the same standards applied by the trial court in deciding a motion for summary judgment. Under the provisions of La. C.C.P. art. 966, the party seeking summary judgment is required to prove two elements: (1) that no genuine issues of material fact exist, and (2) that it is entitled to judgment as a matter of law. If the movant meets its burden of proving these two issues, the burden shifts to the party opposing the motion to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial."[1] Summary judgment is now a favored procedure in Louisiana. La. C.C.P. art. 966(A)(2).
On appeal, Ms. Hewitt makes two assignments of error:

*1122 1. The court below erred in granting a Motion for Summary Judgment in favor of Allstate Insurance Company in that it decided an issue of credibility when, in fact, there are material facts in dispute.
2. Even if the Court was correct in granting a Motion for Summary Judgment dismissing Allstate, it should have dismissed Allstate only as the insurer of the minor child, Jeremie Corley, and should not have dismissed Allstate as the insurer of his parents, Melvin Corley and Cynthia Corley, since the Motion for Summary Judgment did not address them and the allegations in the petition concerning their negligence.

Insurance coverage for intentional acts
"A general liability insurance policy is not intended to cover injuries arising from intentional acts." Hickey v. Centenary Oyster House, 97-1074, p. 5 (La.10/20/98), 719 So.2d 421, 423, citing Lee R. Russ and Thomas F. Segall, 7 Couch 3d on Insurance § 101:22 (1997). Nevertheless, such policies routinely contain specific exclusions from coverage for injuries intentionally inflicted. Id., citing William Shelby McKenzie and H. Alston Johnson, 15 Louisiana Civil Law Treatise Insurance Law and Practice § 164 (1986).
Moreover, an insured party who shoots someone generally is not entitled to insurance protection because gunshots are considered intentional acts intended or expected to cause bodily injury. This principle is explained in McKenzie & Johnson as follows: "Insured who pull loaded guns and shoot other persons have not found the courts receptive to their exculpatory explanations, even in defense of the insurer's motion for summary judgment." Id. A review of Louisiana caselaw on this subject reveals that determination of insurance coverage questions in similar cases turns on the facts of the case, coupled with the policy language at issue.
Ms. Hewitt's first assignment of error is based on her contention that genuine issues of material fact remain, making summary judgment inappropriate on the issue Allstate's liability under the policy for the actions of Jeremie Corley. Specifically, Ms. Hewitt claims that the trial judge improperly made a "credibility call" when he decided the motion. Essentially, Ms. Hewitt claims that the intentional act exclusion of the Allstate policy should not apply to this case because Jeremie Corley's deposition testimony indicates that his shooting of Jamar Montique was not an intentional act; this claim is based on her contention that Jeremie Corley's deposition indicates that he shot Jamar Montique in self-defense.
Since the trial court considered only Jeremie Corley's deposition testimony in this case, he did not make a credibility call. The trial judge presumably accepted all of Jeremie Corley's testimony as true, since no opposing evidence was presented by Ms. Hewitt. Jeremie Corley's deposition indicates that his shooting of Jamar Montique was the result of long-standing enmity between the two boys, which Jeremie Corley attributed to Jamar Montique's having taken money from him on many previous occasions, as well as Jamar Montique's alleged involvement in setting up a robbery of Jeremie Corley by another person. Moreover, Jeremie Corley indicated that his decision to pull the gun and shoot Jamar Montique was caused by his belief that Jamar Montique was pulling a gun when he placed his hand in his pocket. Ms. Hewitt claims that genuine issues of material fact exist concerning this issue.
However, our review of the jurisprudence on this issue indicates that determination of whether Jeremie Corley's shooting of Jamar Montique was motivated by self-defense consideration is not a genuine issue of material fact in this case. Whether a particular fact is material to a dispute for purposes of summary *1123 judgment may be determined only in light of the substantive law applicable to the case. Hall v. Equitable Shipyard, Inc., 95-1754 (La.App. 4 Cir. 2/29/96), 670 So.2d 543. Thus, a "material fact" is "one whose existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery, i.e., one that would matter on trial of the merits." Moyles v. Cruz, 96-0307, 96-0308 (La.App. 4 Cir. 10/16/96), 682 So.2d 326, writ denied, 96-3066 (La.2/7/97), 688 So.2d 504. Thus, a fact is "material" only if it potentially ensures or precludes recovery, affects litigant's ultimate success, or determines the outcome of the legal dispute. Osborne v. Vulcan Foundry, Inc., 95-2766 (La.App. 4 Cir. 5/29/96), 675 So.2d 837.
The "self-defense" issue raised by Ms. Hewitt is material to the instant case only if the intentional act exception in the policy at issue is subject to an exception when a court finds that an insured who shoots another person acted in self defense. However, the jurisprudence on this issue indicates that the intentional act exclusion is not subject to a "self-defense" exception. For example, in Simpson v. Angel, 598 So.2d 584 (La.App. 4 Cir.), writ denied, 605 So.2d 1091 (La.1992), the court found no liability on the part of the insurance company based on a "battery" exclusion despite the shooter's testimony to the effect that he was defending himself at the time of the shooting; the intentional act exclusion in that case was identical to the exclusion at issue in the instant case. Moreover, in Duplechain v. Turner, 444 So.2d 1322 (La.App. 4 Cir.), writ denied, 448 So.2d 114 (La.1984), the court found that an intentional act exclusion precluded insurance coverage for an insured who shot an off-duty policeman, reasonably believing him to be a robber.
Additionally, the facts of this case suggest that Ms. Hewitt's claim that Jeremie Corley's shooting of Jamar Montique was motivated by self defense is misplaced. Jeremie Corley was carrying the gun specifically because of his past relationship with Jamar Montique and because he was afraid of being robbed again; the gun was fully loaded. Jeremie Corley did not testify to any type of physical attack by Jamar Montique, virtually all the problems between the boys on the day of the shooting were verbal, as Ms. Hewitt's own petition indicates. In fact, Jeremie Corley admitted in his deposition that he did not see Jamar Montique with any type of weapon just prior to the shooting. According to Jeremie Corley's deposition, he was accompanied by six of his friends, while Jamar Montique was alone. The fatal shots were fired from approximately eight feet away; the record indicates that Jamar Montique was shot at least once in the back, suggesting flight rather than assault. Under somewhat similar circumstances, the appellate court in Westmore v. Hull, 93-1868 (La.App. 1 Cir. 5/10/94), 636 So.2d 1199, quoted the trial court with favor, as follows:
In its oral reasons for granting the summary judgment, the trial court states, "[i]t is hard to conclude anything other than when you point a pistol or a loaded gun at or near an area where other people are located and you pull the trigger and intentionally discharge a weapon, that have [sic] got to understand that a reasonable consequence of that action is that someone is going to be hit with that bullet. I can't see any other conclusion."
Id. at 1201.
Because there is no "self-defense" exception to the intentional act exclusion in the instant case, Ms. Hewitt's claim that the trial court made an improper "credibility call" has no merit. Moreover, a review of the record in this case reveals no other factual issues which are material to the issue at handi.e., whether Jamar Montique was killed by an intentional act on the part of Jeremie Corley. Accordingly, Jeremie Corley's liability is excluded from insurance coverage by the intentional act exclusion of the Allstate policy at issue. The trial court correctly granted summary judgment on that issue.
The second issue is whether the intentional act exclusion of the Allstate policy precludes coverage on the basis of the Corleys' *1124 alleged independent negligent supervision of Jeremie Corley. Ms. Hewitt claims that the trial court improperly dismissed her claims against Allstate because the motion for summary judgment did not address the allegations in her petition concerning their negligence. We have reviewed the motion for summary judgment filed by Allstate; although that motion does not address Ms. Hewitt's specific allegations relative to the Corleys, the thrust of that petition is that the intentional act exclusion precludes coverage for any damages arising out of Jeremie Corley's intentional act, even if his intentional act was somehow related to his parent's negligence. A close reading of the motion indicates that Allstate's focus on Jeremie Corley's actions is based on its argument that all damages flowing from that act are excluded.
We agree with Allstate on this issue. The relevant caselaw indicates that determination of whether negligent supervision allegations against parents of minors whose intentional actions cause damages depends entirely on the language of the policy at issue. As noted above, the policy in the instant case contains the exact same intentional act exclusion as the policy at issue in Angel. In that case, this court simply dismissed the insurance company from the case without mentioning the alleged negligence of the parents. The court stated as follows: "the policy language clearly excludes all intentional acts of an insured including the intentional acts of defendant's son which are the subject of this litigation." 598 So.2d at 586. The same conclusion, on the same policy language, was reached in Westmore, 636 So.2d 1199. Although we would like to have seen more analysis of this issue in the Angel decision, we nevertheless agree with the conclusion reached for reasons more fully explained below.
In most of the cases cited by Ms. Hewitt that reached a different result on this issue, the policy language was different. In both White v. LeGendre, 359 So.2d 652 (La.App. 1 Cir.), writ denied, 360 So.2d 1176 (La.1968) and McBride v. Lyles, 303 So.2d 795 (La. App. 3 Cir.1974), the policy exclusion at issue stated that it did not insure damages "intended from the standpoint of the insured." That pivotal language does not appear in the policy at issue in this case. But see, Menard v. Zeno, 558 So.2d 744 (La.App. 3 Cir.), writ denied, 561 So.2d 121 (La.1990), in which the court found that the parent's negligence was excluded, despite the fact it included the "intended from the standpoint of the insured" language.
A more closely-analogous case to the instant case on this issue is Travelers Insurance Co. v. Blanchard, 431 So.2d 913 (La. App. 2 Cir.1983). In that case, the court held that the following policy language excluded coverage for a father's vicarious liability for the thefts of his minor son: "We do not cover bodily injury or property damage intentionally caused by an insured person." Distinguishing McBride, the court stated as follows:
Here, the exclusion is not restricted to intentional acts of the particular insured sought to be held liable, but broadly excludes coverage for all intentionally caused injury or damage by an insured person. Therefore, it clearly and unambiguously excluded coverage of the intentional thefts committed by John Blanchard [the son], an insured.
Id. at 915.
The express policy language in the intentional act exclusion of the policy at issue in this case is broad enough to exclude coverage for any bodily injury or property damage arising out of an intentional act. Because Jeremie Corley's shooting of the plaintiffs' son was an "act...intended or expected to cause bodily injury or property damage," coverage is expressly excluded for any and all damages arising out of the intentional act by the policy at issue. Although Ms. Hewitt has attempted to create two different causes of action, the fact remains that the damages sought all fall within the excluded category of "bodily injury ... resulting from ... [a]n act... intended or expected to cause bodily injury." The focus of the policy exclusion is on the cause of the damages, not the cause of *1125 action alleged. All damages caused by intentional acts are excluded, regardless of the classification of the cause of action against the individual defendants. Ms. Hewitt cannot avoid the consequences of the policy language by attempting to couch her allegations against the Corleys as negligent, rather than intentional.
Accordingly, the trial court judgment granting the motion for summary judgment in favor of Allstate is affirmed.
AFFIRMED.
ARMSTRONG, J., dissents in part.
ARMSTRONG, J., dissenting in part.
I respectfully dissent in part. I agree with the majority's conclusion that, based upon the intended or expected bodily injury exclusion of the policy in this case, there is no insurance coverage for Jeremie Corley. However, I would follow McBride v. Lyles, 303 So.2d 795 (La.App.3rdCir.1994), as well as the mainstream of law in this area, see R.E. Keeton and A.I. Widiss, Insurance Law, 5.4(5) at 527-28 (1988), discussed infra, and hold that there is insurance coverage for his parents, Melvin Corley and Cynthia Corley, who are alleged only to have negligently failed to properly supervise their son.[1] I express no opinion as to the liability of the parents as that issue is not before us. I address only the issue of whether there is insurance coverage for their alleged negligence.
I believe that the view that the parents are covered is supported by the generally prevailing interpretation of "intended or expected harm" exclusions:
Vicarious Liability for Intentional Torts and Negligent Supervision
There are various types of situations in which individuals are held to be vicariously liable for an intentional tort of another person. In such cases, the harm for which an insured is vicariously liable often is appropriately viewed as a fortuitous occurrence from the point of view of the insured, as well as the victim. When this is true, courts generally hold that the scope of coverage afforded by liability insurance extends protection for an insured who is vicariously liable for damages resulting from an intentional tort committed by another person.
In most circumstances, courts hold both (1) that the expressed provisions commonly used in liability insurance policies do not preclude coverage for damages awarded for an intentional tort when the insured is held to be responsible on a theory of vicarious liability, and (2) that it would not be appropriate to imply a limitation that would restrict the coverage. For example, courts have concluded that the intentional torts of a child, such as battery upon another person (or an act of vandalism) are fortuitous as to a parent who is held liable for negligently failing to supervise the child so as to prevent the child from causing harm to others.
R.E. Keeton and A.I. Widiss, Insurance Law, § 5.4(5) at 527-28 (1988) (emphasis added). See also McBride v. Lyles, 303 So.2d 795 (La.App. 3rd Cir.1994) (parents covered for their liability for the intentional batteries of their sons).[2]
Moreover, although the insurance policy exclusion in the present case applies if bodily injury results from an act "intended or expected" to cause bodily injury, the exclusion does not specify whose intention or expectation is involved and does not state for whom coverage is excluded. One interpretation of this exclusion, apparently adopted by the majority, is that if the bodily injury is intended or expected by anyone then coverage is excluded as to everyone. Under the majority's *1126 interpretation, the fact that Jeremie Corley intended or expected to cause bodily injury excludes coverage for his parents even though there is no evidence or allegation that the parents intended or expected any bodily injury. However, because the exclusion is silent as to whose intent or expectation is involved and as for whom coverage is excluded, another reasonable interpretation is that coverage is excluded only for the individual who is expected or intended to cause bodily harm. Under this interpretation, coverage is excluded for Jeremie Corley but coverage is not excluded for his parents. If one interpretation of an insurance policy results in coverage while another interpretation of the policy excludes coverage, then the interpretation must be chosen which will result in coverage. E.g. Howell v. American Casualty Co., 96-0694 (La.App. 4 Cir. 3/19/97), 691 So.2d 715, 724, 726, cert. denied 97-1329 (La.9/5/97), 700 So.2d 512, 97-1426 (La.9/15/97), 700 So.2d 518, 97-1379 (La.9/5/97), 700 So.2d 515. In other words, if the exclusion is intended to exclude coverage for anyone other than the individual who intended or expected to cause bodily harm, then it must specifically say so.
Also, the exclusion at issue is couched in terms of causation by ("resulting from") an act intended or expected to cause harm. With respect to the parents, the allegations and the evidence show that their alleged liability is based, not only upon Jeremie Corley's acts, but also upon their alleged negligent failure to supervise Jeremie Corley. Thus, the alleged liability of the parents is based upon two concurrent causesi.e. Jeremie Corley's intentional (excluded) act and their allegedly negligent (covered) act. When the alleged liability upon two concurrent causes, one of which is excluded and the other of which is covered, then the policy is held to provide coverage for the alleged liability. See, e.g., State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal.3d 94, 102, 514 P.2d 123, 130, 109 Cal.Rptr. 811 (1973)/(Discussed with approval in Lucas v. Deville, 385 So.2d 804, 827-28 (La.App. 3rd Cir.), cert. denied, 386 So.2d 357, 359 (La.1980)). See generally L.R. Russ and T.F. Segalla, Couch on Insurance 3d 101:58 (1997). Cf. Terra Resources, Inc. v. Lake Charles Dredging & Towing, Inc., 695 F.2d 828, 831 (5th Cir.1983) ("In Louisiana, however, if an insured's liability arises from two sources, an exclusion pertaining to one source does not preclude coverage based on the other.").
Again, I express no opinion as to the parents' liability. I address only whether there is insurance coverage for them.
NOTES
[1] Because the standards for determining a motion for summary judgment following the 1996 and 1997 amendments to La. C.C.P. art. 966 have been exhaustively explained by this court in numerous previous opinions, we do not set out those standards in detail here. See, generally, Micele v. CPC of Louisiana, Inc., 98-0044 (La. App. 4 Cir. 3/25/98), 709 So.2d 1065, 1067-68, writ denied, 98-1116 (La.6/5/98), 1998 WL 485297, 720 So.2d 686; Rust v. Scaffold Rental & Erection, Inc. v. River City Joint Venture, 97-2146 (La.App. 4 Cir. 3/18/98), 709 So.2d 1037, 1038-39; Spitzfaden v. Dow Corning Corp., 97-1101, 97-1799 (La.App. 4 Cir. 2/11/98), 708 So.2d 777, 779, writ denied, 98-1016 (La.7.2.98), 1998 WL 770679, 724 So.2d 208.
[1] Melvin Corley and Cynthia Corley are not alleged to have intended or expected any bodily injury.
[2] See generally W.S. McKenzie and H.A. Johnson III, 15 Louisiana Civil Law Treatise: Insurance Law and Practice § 164 at 349-51 (2nd ed.1996) (discussing Travelers Ins. Co. v. Blanchard, 431 So.2d 913 (La.App. 2d Cir.1983)).