905 So.2d 368 (2005)
Falyn Marie LESLIE
v.
William C. ANDREWS and Elise Andrews, Individually and on Behalf of their Daughter, Frances Andrews, and Frances Andrews, Major and ABC Insurance Company.
No. 2004-CA-2053.
Court of Appeal of Louisiana, Fourth Circuit.
May 25, 2005.
Writ Denied May 5, 2005.
*369 Richard A. Tonry, Michael C. Ginart, Jr., Kim C. Jones, Richard A. Tonry, II, Cullen A. Tonry, Law Offices of Tonry & Ginart, Chalmette, LA, for Plaintiff/Appellant, Falyn Marie Leslie.
John W. Waters, Jr., Robin C. O'Bannon, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, LA, for Defendant/Appellee, Audubon Insurance Company.
(Court Composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., and Judge LEON A. CANNIZZARO, JR.).
MAX N. TOBIAS, JR., Judge.
This case arises from a coverage dispute between the victim of a stabbing and the insurance company that provided liability coverage to the parents of her attacker under a homeowner's policy.
On 29 September 2000, eighteen-year-old Falyn Marie Leslie ("Leslie") and a friend, Holly Bauer ("Holly"), were attending a fair at a high school in Meraux, Louisiana, when they were accosted by at least two other girls, including Frances Andrews ("Frances") and her sister. According to Leslie, Frances and a group of friends followed and taunted her at the fair, apparently trying to incite her to fight. Leslie and Holly later exited the fair and were approached by Frances and one other girl in the parking lot. The girls accosted Leslie and Holly and a fight broke out. During the fight, Frances pushed Leslie against a vehicle and stabbed her in the abdomen, lacerating her liver. Frances was subsequently charged with aggravated battery, to which she pleaded nolo contendere.
On 31 July 2001, Leslie filed suit against Frances, Frances' parents,[1] and Audubon Insurance Company ("Audubon"), the insurer providing coverage to Frances' parents through a homeowner's policy. In her petition for damages, Leslie alleges:
VI.
That in the parking lot outside the fair, Petitioner and her friend were again threatened by Frances Andrews and several others. A fight broke out between Frances Andrews['s] friend, Christina Jenkins, and Petitioner's friend, Holly Bauer.
V.
That, as Holly and Christina were fighting, suddenly and without warning, defendant FRANCES ANDREWS attacked Petitioner. When Petitioner tried to throw Defendant to the ground, FRANCES ANDREWS came up with a knife and stabbed Petitioner causing significant injury including but not limited to a piercing wou[n]d to her liver. (Emphasis in original.)
During the course of the litigation, Leslie and Holly were deposed, and both testified that Frances intentionally stabbed Leslie.
The Audubon homeowners' policy, which provided coverage to Frances' parents beginning on 1 September 2000 for "personal liability," contained an exclusion from coverage for damages caused by intentional acts. The exact language in the exclusion is at issue, insofar as there are two possible exclusions contained in the policy. The original exclusion in the policy reads as follows:
Coverage E  Personal Liability and Coverage F  Medical Payments to *370 Others do not apply to "bodily injury" or "property damage":
a. Which is expected or intended by the "insured".... (Emphasis in original.)
However, there is an endorsement to the policy ("the endorsement") that reads:
Under coverage E-Personal Liability and Coverage F-Medical Payments to Others, item a. is deleted and replaced by the following:
a. which is expected or intended by one or more "insureds."
Leslie contends that it is unclear whether the original exclusion or the endorsement applies to her claims, insofar as the declarations page submitted by Audubon contained an "effective" date of 13 January 2001, several months after the stabbing. Audubon maintains that the endorsement was in effect at all times during the policy period and, in particular, at the time of the stabbing.
The policy, in its "definitions" section, states that:
"Insured" means you and residents of your household who are:
a. Your relatives; or
b. Other persons under the age of 21 and in the care of any person named above.
There is no endorsement attached to the policy that modifies this definition.
Audubon filed a motion for summary judgment on 2 May 2003, asserting that it was entitled to a judgment as a matter of law because the policy issued by Audubon does not cover intentional damages inflicted by the insureds or residents of their household under the age of twenty-one. In support of its motion for summary judgment, Audubon submitted deposition testimony of Leslie and Holly, a copy of the petition for damages, the bill of information detailing the criminal charges against Frances, transcript of the sentencing hearing of Frances, and a copy of the policy. The trial court granted the motion on 26 June 2003.
On 3 July 2003, Leslie filed a motion for new trial "for reargument only" on Audubon's motion for summary judgment. The trial court granted the motion, denying the summary judgment, and found that it had not received sufficient evidence to determine whether the endorsement sought to be enforced by Audubon was in effect on 29 September 2000, in light of the confusing amended declarations page that noted an "effective" date of 13 January 2001. The court expressed no opinion as to whether revisiting that issue would change the outcome of the summary judgment, or whether the endorsement precluded coverage for Leslie's claims.
On 18 February 2004, Audubon submitted an affidavit executed by Dianne Deno ("Deno"), an underwriter for Audubon.[2] She averred that the policy (including the endorsement) was issued to Frances' parents effective 1 September 2000 and that no other policy, amended or otherwise, was issued to Frances' parents. She also averred that the policy was not cancelled during the policy period, but that the policy only remained in effect until 31 March 2001. The statement is incorrect, because the policy was cancelled on 31 March 2001 for non-payment of the premium.
Audubon filed a second motion for summary judgment on 10 May 2004, on the identical grounds as the first motion for summary judgment. Attached to the motion was a second affidavit executed by Deno, which echoed the first, but with some alterations and additions. In this affidavit, Deno stated that the policy in *371 question was issued to Frances' parents and became effective on 1 September 2000; that the policy would have remained in effect for one year, or until 1 September 2001, but for the cancellation of the policy on 31 March 2001 for non-payment of premium; that no other policy was issued to Frances' parents (or Frances) by Audubon; that the endorsement was in effect on 29 September 2000; and that the amendment to the declaration page[s] which became effective on 13 January 2001 reflected a correction as to the mortgagee, addition of a second mortgagee to the declarations page, and an increase in the limits of liability under the "coverage" portion of the policy. However, the declarations page(s) attached to this motion for summary judgment were identical to those submitted in support of the first, ultimately unsuccessful, motion for summary judgment.
On 26 July 2004, apparently aware of its error, Audubon filed another motion for summary judgment, with an amended memorandum in support and a "Notice of Correction to Exhibit `H' Attached to Audubon's Memorandum in Support of Motion for Summary Judgment." The motion and exhibits remained identical to the previously-filed motion, except that the policy attached included the "original" homeowners declaration that specifically listed the endorsement and which did not contain an "effective date" of 13 January 2001. The motion was set for hearing on 20 August 2004.
The trial court granted the second motion for summary judgment without written reasons on 8 September 2004 and certified the judgment as final and ripe for appeal on 23 September 2004.
Leslie appealed the summary judgment in favor of Audubon and assigned three errors to the trial court. First, Leslie argues that summary judgment was improperly granted in light of the confusion regarding the effective date of the endorsement containing the exclusionary language. Second, Leslie asserts that the trial court erred in failing to find that the policy covered a cause of action for negligent supervision against Frances' parents. Similarly, Leslie asserts that the policy provides coverage for vicarious parental liability of Frances' parents for the actions of their daughter. Audubon counters that the policy clearly excludes Frances' actions as intentional acts and that all derivative causes of action, such as vicarious liability or negligent supervision, are similarly precluded from coverage.
Our review of the summary judgment is de novo. First we look to whether the trial court improperly granted summary judgment in light of the seemingly contradictory evidence submitted by Audubon. In particular, Leslie draws our attention to the discrepancies in the affidavits executed by Deno, which she asserts create a genuine issue of material fact. We disagree.
Summary judgment is a favored procedure in Louisiana. La. C.C.P. art. 966(A)(2). In order to prevail on summary judgment, a defendant must establish that the plaintiff will be unable to prevail on at least one essential element of her cause of action at a trial on the merits. La. C.C.P. art. 966(C)(2). Thereafter, the plaintiff must provide evidence that she will be able to carry her burden of proof as to the disputed element of her claim at a trial on the merits to defeat the motion for summary judgment. Id.
Leslie's main complaint is that the evidence provided by Audubon, in particular the affidavits executed by Deno and the declarations pages submitted by Audubon, is contradictory and creates a genuine issue of material fact regarding the true *372 language of the intentional act exclusion.[3] The differences in the affidavits deal with the fact that the policy was cancelled in March 2001 for failure to pay the premium. Although Deno stated originally that the policy was not cancelled during the policy period, she corrected herself in the later affidavit, stating that the policy period was to end on 1 September 2001. However, whether the policy was cancelled in March 2001 is of no moment; the incident occurred in September 2000 and it is undisputed that the policy issued by Audubon was in effect at that time and had not been cancelled. Thus, this inconsistency was not material to the issue of coverage before the trial court.
What is material to our determination, however, is whether Audubon established by a preponderance of the evidence that the endorsement replacing the initial exclusion in the policy was in effect at the time of the incident giving rise to this suit, or 29 September 2000. Audubon has provided a declarations page that does not contain the effective date of 13 January 2001, but that purportedly outlines coverage provided to Frances' parents at the outset of the policy period. Deno's affidavit provides an explanation for the amended declarations page initially attached to the policy for the motion for summary judgment: a new declarations page was issued to reflect a corrected mortgagee, a second mortgagee, and further to increase the limits of liability under the "Coverage" section of the policy.[4] Her final affidavit is supported by an examination of the declarations pages. The endorsement is specifically noted as being a part of the policy on both versions of the declarations page and does not seem to be subject to the effective date of 13 January 2001. Thus, we find that the evidence preponderates to show that no genuine issue of material fact exists: the endorsement was in effect on 29 September 2000. Our attention next turns to whether the endorsement excludes all of the causes of action raised against Frances and Frances' parents by Leslie, including those based on vicarious liability and negligent supervision.
This court's opinion in Hewitt v. Audubon Ins. Co., 98-0221 (La.App. 4 Cir. 1/27/99), 726 So.2d 1120, is instructive regarding the interpretation of intentional act exclusions. In Hewitt, the plaintiff's minor son was shot and killed by the minor son of the insureds under a homeowner's liability policy. The policy in Hewitt excluded coverage for injuries or damages arising from:
An act or omission intended or expected to cause bodily injury or property damage. This exclusion applies even if the bodily injury or property damage is of a different kind or degree, or is sustained by a different person or property, than that intended or expected; ... (Emphasis supplied.)
In the analysis of the case, this court noted that the applicability of an exclusionary clause in an insurance policy turns on the language used in the clause. Id. at p. 8, 726 So.2d at 1124. We found that the language in the clause was "broad enough to exclude coverage for any bodily injury or property damage arising out of an intentional *373 act," because it focused on the cause of the damages and not the cause of the actions alleged. (Emphasis in original.) Id. at p. 9-10, 726 So.2d at 1124-1125.
Apparently Audubon had noted this distinction, and at some point modified its intentional act exclusion to encompass not only damages intended or expected by the intentional actor, but also those arising from an intentional action of any insured under the policy. Therefore, while a reading of the original exclusion might provide coverage for a cause of action against Frances' parents based on vicarious liability or negligent supervision (insofar as Frances' parents did not intend or expect that Leslie would be stabbed), the endorsement effectively precludes coverage for any cause of action arising from a "bodily injury" that is "intended or expected by any insured", including Frances. (Emphasis supplied.)
Leslie argues that even if the endorsement applies to Frances' parents policy, there is additional language in the same endorsement that renders the endorsement vague and unenforceable to the extent it excludes vicarious parental liability. In the "Limit of Liability" section of the policy, the following is provided:
Special Limit of Liability: Our total liability under Coverage E is $10,000.00 for damages for which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded. This special limit does not increase the Coverage E limit of liability.
Although the language seems to allow for the recovery of damages for vicarious parental liability, it clearly only does so where that coverage is "not otherwise excluded." Because vicarious parental liability is excluded in the personal liability section of the policy, it is not provided coverage by this portion of the policy. Therefore, no genuine issue of material fact exists: there is no coverage provided by the Audubon policy for the potential vicarious liability or negligence of Frances' parents in connection with the criminal acts of their daughter.
For the foregoing reasons, we find that the trial court did not err in granting summary judgment in favor of Audubon in this litigation, as the evidence clearly preponderates to show that the policy language excludes all causes of action asserted by Leslie against Frances and Frances' parents, the insureds under the policy. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] At the time of the attack, it is undisputed that Frances was an unemancipated minor living at home with her parents, William C. Andrews and Elise Andrews (herein, "Frances' parents").
[2] There is no motion attached to the affidavit; it appears to have been filed into the record.
[3] Although the trial court denied the first motion for summary judgment on the grounds that the declarations page seemed to indicate that the policy had an effective date of 13 January 2001, we note that there is no real contention that the policy was not in effect at the time of the stabbing of Leslie. Further, Leslie does not dispute that her attacker (Frances) was an insured under the terms of the policy or that the policy contains an intentional act exclusion.
[4] The changes to the "Coverage" section do not affect our analysis of the issues before us.