15 So.3d 122 (2009)
Cathy REINHARDT, individually and on behalf of her minor son, Joseph Untz, II
v.
Terry L. BARGER and Barbara Barger, individually and on behalf of the Minors, Brandon Barger, Brent Barger and Jacob Barger and ABC Insurance Company.
No. 2007 CA 2363.
Court of Appeal of Louisiana, First Circuit.
April 29, 2009.
Rehearing Denied June 30, 2009.[*]
John W. Redman, Margaret E. Madere, New Orleans, LA, for Plaintiffs-Appellants, Cathy Reinhardt, et al.
Peter L. Donovan, Metairie, LA, for Defendants-Appellees, Terry L. Barger, et al.
Jude H. Trahant, Jr., Madisonville, LA, for Defendant-Appellee, Allstate Insurance Company.
Before CARTER, C.J., WHIPPLE, PARRO, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, McCLENDON, HUGHES, and WELCH, JJ.
PER CURIAM.
In the courts of appeal of the State of Louisiana, "[a] majority of the judges sitting in a case must concur to render judgment." La. Const. Art. V, § 8(B). Because the en banc panel of this court is evenly split, no majority has concurred to reverse or modify the trial court's judgment; thus, the judgment of the trial court must stand, and the effect of the court of appeal's vote is to affirm the trial court's judgment as rendered. Parfait v. Transocean Offshore, Inc., XXXX-XXXX (La.3/14/08), 980 So.2d 634, 638-639.
TRIAL COURT JUDGMENT STANDS.
KUHN, GUIDRY, GAIDRY and HUGHES, JJ., concur and assign reasons.
PARRO, J., concurs and assigns reasons, joined by McCLENDON, J.
PETTIGREW, J., concurs and assigns reasons, joined by DOWNING and WHIPPLE, JJ.
*123 WELCH, J., concurs with the reasons assigned by PETTIGREW and HUGHES, JJ.
McDONALD, J., concurs for reasons assigned by KUHN, GAIDRY, and PARRO, JJ.
PETTIGREW, J., concurring.
Although I am compelled to concur with the per curiam because this court's en banc panel is evenly split, I take this opportunity to express why I am of the opinion the trial court should be reversed.
This is an action for personal injuries sustained by a minor child, who was allegedly attacked and beaten by several of the defendants. The mother of the injured minor instituted the present lawsuit, both individually and on behalf of her child, seeking recovery for the negligent and intentional acts of the defendant parents, their grown children, and their minor child for whom the parents are vicariously liable. The trial court granted summary judgment in favor of the defendants' homeowner's insurer based upon an intentional act exclusion contained in the policy. For the reasons that follow, I am of the opinion the trial court should be reversed and this matter should be remanded for further proceedings.

FACTS
Cathy Reinhardt, plaintiff herein, filed the instant suit on July 7, 2005, seeking to recover damages for personal injuries allegedly sustained by her minor son, Joseph Untz, II ("Joey"), when he was involved in a fight with one or more members of the Barger family in front of the Barger residence. Named as defendants in this matter are Terry L. Barger ("Mr. Barger"), his wife, Barbara Barger ("Mrs. Barger"), their sons, Brandon Barger, Brent Barger, and Jacob B. Barger, together with Allstate Insurance Company ("Allstate"), in its capacity as the homeowner's insurer of Mr. and Mrs. Barger.
Ms. Reinhardt has alleged in her petition that on or about January 2, 2005, Joey was brutally attacked and beaten without provocation[1] by Mr. Barger and his sons, Brandon, Brent, and Jacob, while on the Barger property situated at 304 Cumberland Street in Slidell, Louisiana.[2] The record also reflects that Mr. Barger and two of his sons, Brent and Jacob, later pled guilty to simple battery on Joey in connection with this incident. The parties do not dispute that Mr. Barger and Mrs. Barger are the natural parents of Brandon, a minor at the time of the alleged beating, who resided with his parents at the Cumberland Street address.
Mr. and Mrs. Barger purchased a homeowner's policy through Allstate that provides coverage for personal injuries sustained on the premises. Ms. Reinhardt has also alleged that Mr. and Mrs. Barger are vicariously liable for any tortious acts committed by their minor son, Brandon, pursuant to La. Civ.Code art. 2318. Additionally, the parties do not dispute that Mrs. Barger took no part in the alleged beating.

ACTION OF THE TRIAL COURT
In response to the petition for damages filed by Ms. Reinhardt, Allstate filed a motion for summary judgment seeking dismissal of Ms. Reinhardt's claims against the insurer on the ground that the homeowner's *124 policy issued to the Bargers excludes from coverage any liability arising from intentional acts on the part of an insured (the "intentional acts exclusion").
In a judgment rendered in open court on March 6, 2007, and signed on March 19, 2007, the trial court granted Allstate's motion for summary judgment and dismissed all claims against the homeowner's insurer with prejudice. Ms. Reinhardt thereafter filed an application for a supervisory writ and reversal of the summary judgment in favor of Allstate. This court later denied Ms. Reinhardt's writ application and ordered that the case be remanded to the trial court with instructions to grant Ms. Reinhardt an appeal. Ms. Reinhardt was directed to submit an order for appeal to the trial court within thirty days.
Due to Ms. Reinhardt's failure to file her motion for appeal until thirty-one days after entry of this court's order, Allstate filed a motion seeking to dismiss the appeal. On March 5, 2008, a panel of this court denied Allstate's motion and maintained Ms. Reinhardt's appeal.[3]

ISSUE PRESENTED FOR REVIEW
The sole issue presented by this appeal is whether an intentional act exclusion contained within the provisions of a homeowner's policy that purports to exclude coverage for damages resulting from a parent's vicarious liability for the intentional acts of their minor child, contravenes the public policy of the State of Louisiana.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Coop., Inc., 2001-2956, p. 3 (La.App. 1 Cir. 12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2); Thomas v. Fina Oil and Chemical Co., XXXX-XXXX, pp. 4-5 (La. App. 1 Cir. 2/14/03), 845 So.2d 498, 501-502.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2); Robles v. ExxonMobile, *125 XXXX-XXXX, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, XXXX-XXXX, p. 5 (La.4/9/03), 842 So.2d 373, 377. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 7 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637.

DISCUSSION
This case presents no genuine dispute as to the material facts alleged in the petition with respect to how the injury occurred. The critical issue therefore is whether, in light of the undisputed facts, Allstate is entitled to judgment as a matter of law based upon the exclusion contained within its policy. In her brief to this court, Ms. Reinhardt asserts that the legal question posed by the instant appeal is whether it is against the public policy of this state to allow a homeowner's insurer, i.e., Allstate, to exclude coverage for damages resulting from a parent's vicarious liability for the intentional acts of his or her minor child. For purposes of the instant appeal, Ms. Reinhardt has conceded that any intentional torts allegedly committed by the adult defendants, i.e., Mr. Barger, Brent, and Jacob, are excluded from coverage under the intentional acts exclusion set forth in the Allstate policy. Ms. Reinhardt further urges that the trial court's rendition of summary judgment should be reversed because the exclusion of coverage for a parent's vicarious liability resulting from an intentional act committed by a minor child is against the public policy of this state as well as a specific directive of the Louisiana Commissioner of Insurance ("Commissioner").
The interpretation of an insurance contract is nothing more than a determination of the common intent of the parties. Doerr v. Mobil Oil Corporation, 00-0947, p. 4 (La.12/19/00), 774 So.2d 119, 124; see also La. Civ.Code art.2045. The initial determination of the parties' intent is found in the insurance policy itself. Doerr, 00-0947 at 5, 774 So.2d at 124. In analyzing a policy provision, the words, often being terms of art, must be given their technical meaning. Id.; see also La. Civ. Code art.2047. When these technical words are unambiguous and the parties' intent is clear, the insurance contract will be enforced as written. Doerr, 00-0947 at 5, 774 So.2d at 124; see also La. Civ.Code art.2046. Courts lack the authority to change or alter the terms of an insurance policy under the guise of interpretation. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759, 764. If on the other hand, the contract cannot be construed simply, based on its language, because of an ambiguity, the court may look to extrinsic evidence to determine the parties' intent. Doerr, 00-0947 at 5, 774 So.2d at 124.
When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. When making this determination, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage. Id.
*126 The purpose of liability insurance is to afford the insured protection from damage claims. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Ambiguous policy provisions generally are to be construed against the insurer who issued the policy and in favor of coverage to the insured. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured had no voice in the preparation. Louisiana Insurance Guaranty Association, 630 So.2d at 764. The determination of whether a contract is clear or unambiguous is a question of law. Watts v. Aetna Casualty and Surety Co., 574 So.2d 364, 369 (La.App. 1 Cir.), writ denied, 568 So.2d 1089 (La.1990). Subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. See Reynolds, 634 So.2d at 1183.
The exclusionary clause contained in the Allstate policy that formed the basis of the trial court's grant of summary judgment provides as follows:
SECTION II  Family Liability and Guest Medical Protection
Coverage X
Family Liability Protection
Losses We Cover Under Coverage X:
Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.
* * * *
Losses We Do Not Cover Under Coverage X:
1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of any insured person. This exclusion applies even if:
a) such insured person lacks the mental capacity to govern his or her conduct;
b) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.
This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime. [Bold emphasis supplied]
In connection with the trial court's grant of Allstate's motion for summary judgment, the following colloquy took place:
THE COURT:
I grant the Motion for Summary Judgment. I think it's well established that insurance companies are only responsible for the negligent acts of their [sic] minor children. The only thing you could possibly argue is that they didn't mean to beat him up so badly, or they didn't understand their own strength. Also, your client had a little bit to do with this. He went over their [sic] with a bat after an argument ensued, alleged, about him calling too late at night and he went over to settle the score. I guess he was friends with one of the Bargers, and I guess he didn't expect to get beaten up.
I note your objection for the record.
[Counsel for defendant ALLSTATE]:

*127 I'll prepare a judgment, Your Honor.
THE COURT:
The Court finds, as a matter of fact, there's no genuine issue of material fact as to the exclusion in the policy. It's quite clear from all the pleadings that Allstate has no liability in this matter, at least no obligation to pay for any damages, I should say. I do note, even procedurally today, I think it's alleged that [Joey] is now a major, but the record doesn't reflect that he's been substituted. And since there was no objection raised, I will not address that.
[Counsel for plaintiff]:
Your Honor, just so I'm clear, the Court is making a finding that, as a matter of law, Directive 152 does not apply to intentional acts of minors.
THE COURT:
Yes.
[Counsel for plaintiff]:
Thank you, Your Honor.
In granting Allstate's motion for summary judgment, the trial court explicitly ruled that Directive Number 152 issued by the Commissioner did not apply to the intentional acts of minors. On appeal Ms. Reinhardt relies upon this directive and argues that the trial court's grant of summary judgment should be reversed because the exclusion of coverage for a parent's vicarious liability resulting from an intentional act committed by his or her minor child is against the public policy of this state.
The Commissioner of Insurance is a constitutionally-created office, and the elected official holding that office is statutorily charged with the administration of the Louisiana Insurance Code and the protection of the public interest relative to insurance matters. See La. Const, art. IV, § 11; La. R.S. 22:2. In accordance with these statutory mandates, the Commissioner is authorized to promulgate rules and regulations which the Commissioner deems necessary. La. R.S. 22:3. Thus, any rules and regulations issued by the Commissioner are done so with the public's interest foremost in mind.
On June 9, 2000, the Commissioner issued Directive Number 152, a copy of which is contained within the record of this matter, in response to this court's decision in Baugh v. Ray, 97-2625 (La.App. 1 Cir. 5/5/99), 751 So.2d 888 (on rehearing). The question presented to the court in Baugh was whether it was against public policy for a homeowner's insurer to limit coverage due to statutorily-imposed vicarious parental liability without specifically advising the insured of the reduction in coverage. In its per curiam opinion in Baugh, a panel of this court held that our "law does not mandate insurance coverage for vicarious liability arising from the acts of one's children, and there is no state law or public policy prohibiting a lower limit for parental vicarious liability." Baugh, 97-2625 at 1, 751 So.2d at 888-89.[4]
In issuing Directive Number 152, the Commissioner reasoned:

*128 When consumers purchase homeowner's insurance, their intent is to purchase a broad package policy to protect themselves from a broad range of risks that may arise out of homeownership and personal liability. A limitation for liability coverage related to children is not a reasonable expectation of the policyholder. No homeowner would knowingly purchase a homeowner's policy limiting coverage for their liability with respect to their children.
As part of this same directive, the Commissioner further declared:
Because the Department of Insurance is charged with the duty of regulating the business of insurance in the public interest, the Department of Insurance views the use of any type of limitation clause in a homeowner's policy which results in limiting the liability coverage of an insurer for parents' vicarious liability for acts of their children is against the public interest. [Bold emphasis supplied]
In response to the arguments put forth by Ms. Reinhardt, Allstate contends on appeal that the Allstate policy at issue does not contain any provision addressed in Directive 152.
Additionally, Allstate contends that on its face, Directive 152 does not pertain to the intentional acts exclusion. Allstate argues that Directive 152 does not state that an insurer's coverage of the parents' vicarious liability for the tort of a child is broader than the parent's liability for their own torts, or broader than the explicit language of the insuring agreements of the policy. Liability arising from intentional acts is excluded from coverage, whether the parents' liability is vicarious, for their child's intentional tort, or direct, for their own intentional tort.
Recently this court handed down the case of P.D. v. S.W.L., 07-2534 (La.App. 1 Cir. 7/21/08), 993 So.2d 240, writ denied, 08-2770 (La.2/13/09), 999 So.2d 1146. In P.D., this court found that the homeowner's policy issued to the defendants contained an exclusion providing for no personal liability or medical payments coverage for "bodily injury ... [a]rising out of sexual molestation" and precluded coverage under the policy for alleged acts of non-consensual sexual intercourse and non-consensual sexual conduct by defendants' minor child. See P.D., 07-2534 at 14, 993 So.2d at 248. Although this court was not persuaded by the plaintiff's argument that pursuant to Directive 152, any exclusion that limited coverage for the parent's vicarious liability for the alleged acts of sexual molestation by their son violated public policy, this court specifically found that the issue of whether Directive 152 precluded application of the sexual molestation exclusion with respect to parental vicarious liability was not an issue before this court. See P.D., 07-2534 at 13, 993 So.2d at 248. Furthermore the court in P.D. specifically pretermitted consideration of the issue of whether it is against the public policy of this State to allow a homeowner's insurer to exclude coverage for damages resulting from a parent's vicarious liability for intentional acts of his or her minor child. Id.
In Perkins v. Shaheen, 03-1254 (La. App. 3 Cir. 3/3/04), 867 So.2d 135, the Third Circuit interpreted language from a Farm Bureau policy similar to the Allstate provision at issue in this case, and in effect concluded that Directive 152 issued by the Commissioner only prohibits exclusions resulting from a child's negligent acts, but does not prohibit an exclusion for a minor's intentional acts. Perkins, 03-1254 at 5, 867 So.2d at 139.
Ms. Reinhardt asserts that the court's holding in Perkins is not binding on this court. Ms. Reinhardt further points to the *129 fact that Directive 152, pursuant to its terms, is not restricted in its application to parental liability stemming only from a child's negligent acts. Directive 152 clearly states that "the Department of Insurance views the use of any type of limitation clause in a homeowner's policy which results in limiting the liability coverage of an insurer for parents' vicarious liability for acts of their children is against the public interest." [Emphasis supplied]. It is the position of Ms. Reinhardt that if, in drafting Directive 152, the Commissioner had intended to restrict his comments on parental vicarious liability only to negligent acts, he could have easily done so.
It is the job of the courts to resolve disputes over insurance coverage. Doerr, 00-0947 at 24, 774 So.2d at 134; see La. Const, art. V, § 1. Because of the Commissioner's role in the regulation of Louisiana insurance law, his opinion regarding matters within his province, such as protection of the public interest in the realm of insurance, is persuasive. Doerr, 00-0947 at 23-24, 774 So.2d at 134. Directive 152 was issued by the Commissioner in direct response to this court's ruling in Baugh, wherein this court held that an insurance clause limiting parental vicarious liability for the acts of one's minor children was not contrary to public policy. The Baugh case dealt with an intentional act (i.e., sexual assault) by a minor on another individual. Directive 152 established a public policy prohibiting an insurer from limiting the liability coverage available to parents due to their statutorily-imposed vicarious liability for both the negligent and intentional acts of their minor children.
Directive 152 further declares that "[a] limitation for liability coverage related to children is not a reasonable expectation of the policyholder. No homeowner would knowingly purchase a homeowner's policy limiting coverage for their liability with respect to their children."
Considering the foregoing, it is my opinion that any exclusion in the Allstate policy that purports to limit coverage to Mr. and Mrs. Barger for their vicarious liability stemming from the acts of their minor child must be considered null and against the public policy of this state.

CONCLUSION
For the reasons set forth above, I would reverse the summary judgment in favor of Allstate, and remand this case to the trial court for further proceedings. I would further hold to the extent this concurring opinion is inconsistent with this court's previous opinions in Baugh and P.D., these previous opinions would be expressly overruled.
HUGHES, J., concurring with the PER CURIAM action of the court.
I respectfully disagree with this court's action. The Commissioner's Directive 152 is not binding. But Louisiana law forces parents to be responsible for their minor children. They cannot contract away this responsibility. It should be against public policy for an insurer to exclude this risk. It is not a fair bargain for the parents.
The intentional acts exclusion is to prevent adults from acting poorly because they will be covered by the insurance company, not to hang parents out for every shoving match or rock thrown. If parents are required to be responsible for these acts they should have the opportunity to purchase insurance for them.
GAIDRY, J., concurring.
I concur in the per curiam opinion, but believe that the trial court's judgment should be affirmed on the merits. The policy language is unambiguous in excluding coverage for the intentional or criminal *130 acts or omissions of any "insured person." Brandon Barger was the minor dependent son of the named insureds and resided with them. He was thus an "insured person" as defined in the policy.
The public policy of this state has long been that an intentional tortfeasor should not be allowed to insure his intentional wrongful acts and thereby elude ultimate personal responsibility for them. The mere fact that the liability of the parents of a minor tortfeasor is vicarious does not in any way negate the rationale for that public policy. This conclusion is self-evident from the parallel policy underlying the strict liability of parents for the torts of their minor children. See La. C.C. art. 2318. The basis for imposition of such liability on parents is their right and duty to control the behavior of their minor children. If parents could be said to "reasonably expect" that their liability insurer would assume financial responsibility for their child's intentional delictual acts, or even crimes, then the parents would have even less incentive to regulate their child's behavior. (Irresponsible parents might even encourage such behavior on the part of their child, or use their child to commit intentional acts on their behalf, secure in the belief that their insurer would "pick up the tab.") Directive No. 152 does not explicitly address the issue of vicarious liability for intentional acts, as opposed to negligence, and cannot logically be read as establishing or recognizing a new public policy contrary to the longstanding public policy supporting an "intentional acts" exclusion in a liability policy.
KUHN, J., concurring.
While this court cannot reach an executable majority addressing the merits of this case, I write separately to address why the trial court's judgment should be affirmed on the merits.
Plaintiff, Cathy Reinhardt, does not challenge that the acts of defendant, Mr. Barger, and his sons were intentional and that the language of Allstate's homeowners' policy excludes liability arising from intentional acts, unless the policy language is deemed against public policy. Plaintiffs sole argument advanced on appeal is that the "intentional act" exclusion contravenes Louisiana public policy, because it applies to a parent's vicarious liability for the acts of a minor under La. C.C. art. 2318. Plaintiff relies on Louisiana Insurance Commissioner's Directive 152 to support her argument. That directive states, in pertinent part:
When consumers purchase homeowner's insurance, their intent is to purchase a broad package policy to protect themselves from a broad range of risks that may arise out of homeownership and personal liability. A limitation for liability coverage related to children is not a reasonable expectation of the policyholder. No homeowner would knowingly purchase a homeowner's policy limiting coverage for their liability with respect to their children.
Because the Department of Insurance is charged with the duty of regulating the business of insurance in the public interest, the Department of Insurance views the use of any type of limitation clause in a homeowner's policy which results in limiting the liability coverage of an insurer for parents' vicarious liability for acts of their children is against the public interest.
This language does not specifically address intentional acts of a minor, so it is unclear whether the Commissioner contemplated the factual situation at hand or was attempting to solely address blanket reductions in coverage when the liability is based on the vicarious liability of the parents' minor children, which would also limit *131 liability for negligent acts. But even if the Commissioner contemplated exclusions for liability based on intentional acts of minors, the Commissioner's directive is not controlling in this case.
The Office of the Commissioner of Insurance is a constitutionally-created office, and the elected official holding that office is charged with the administration of the Insurance Code and the protection of the public interest in the realm of insurance. See La. Const. Art. IV § 11; La. R.S. 22:2; Doerr v. Mobil Oil Corp., 00-0947, pp. 23-24 (La.12/19/00), 774 So.2d 119, 134. Due to the Commissioner's role in the regulation of Louisiana insurance law, his opinion regarding matters within this province is persuasive. However, it is the job of the courts to resolve disputes over insurance coverage. See La. Const. Art. V, § 1; Doerr, 00-0947 at p. 24, 774 So.2d at 134. Thus, we cannot allow the commissioner to usurp either the legislative or judicial role.
As a strict constructionist, I believe the role of the judiciary is to apply the laws as written by the legislature. Pursuant to La. C.C. art.2047, "[t]he words of a contract must be given their generally prevailing meaning." Because there is no ambiguity in the policy in question, its words should be given effect. In the absence of a conflict with a statute or public policy, insurers have the same rights as individuals to limit their liability and impose whatever conditions they desire upon their obligations. Sims v. Mulhearn Funeral Home, Inc., 07-0054 (La.5/22/07), 956 So.2d 583, 595. The insurance policy establishes the limits of liability, and that policy is the law between the parties. Id. at pp. 18-19, 956 So.2d at 595. When the provisions of the policy are clear and unambiguous, we must enforce the policy as written. La. C.C. art.2046.
The apparent public policy consideration underlying the exclusion of insurance coverage for intentional torts is that a person should not have advance protection against the consequences of his intentional wrongdoing. I see no compelling public policy argument that would contradict the extension of this principle to minors who engage in intentional wrongdoing. Why should the insurer bear the costs that arise from this intentional activity rather than the parents who should be supervising their minor children? Thus, I conclude that Allstate's policy language should be given effect, and this court should affirm the trial court's judgment, which granted Allstate's motion for summary judgment and dismissed plaintiffs claims against Allstate.
GUIDRY, J., concurring.
I concur in the per curiam opinion. The language of the policy at issue unambiguously excludes coverage for the intentional or criminal acts or omissions of any "insured person." Brandon Barger was an insured person as defined by the policy. Therefore, I would affirm the decision of the trial court.
PARRO, J., concurring.
I concur in the per curiam opinion essentially for the reasons set forth by Judge Kuhn. I write separately to emphasize the significance that the division of powers between the legislative, executive, and judicial branches of government has on the merits of this case. See LSA-Const. art. II, § 1.
The sources of law are legislation and custom. LSA-C.C. art. 1. Legislation is the superior source of law in Louisiana. LSA-C.C. art. 1, Revision Comments  1987, comments (a) and (c). Legislation is a solemn expression of legislative will. LSA-C.C. art. 2. The Louisiana Insurance Code (Code) was enacted by the legislature to regulate the insurance industry, an *132 industry affected with the public interest, in all of its phases. See LSA-R.S. 22:2(A)(1). Pursuant to the authority contained in the Constitution of Louisiana,[1] the office of the commissioner of insurance (commissioner) was created. The duty of the commissioner is to administer the provisions of the Code. LSA-R.S. 22:2(A)(1). Louisiana Revised Statute 22:11 gives the commissioner authority to promulgate rules and regulations necessary for the "implementation" of the Code. Due to the commissioner's role in the regulation of Louisiana insurance law, his opinion regarding matters within this province is persuasive. Doerr v. Mobil Oil Corp., 00-0947 (La.12/19/00), 774 So.2d 119. However, the commissioner is not the final, definitive arbiter for the interpretation and reconciliation of the Code and insurance policy language. That role is, of course, constitutionally assigned to the judiciary. ANR Pipeline Company v. Louisiana Tax Commission, 01-2594 (La.App. 1st Cir.3/20/02), 815 So.2d 178, 183-84, affirmed and remanded, 02-1479 (La.7/2/03), 851 So.2d 1145. Thus, it is the job of the courts to resolve disputes over insurance coverage. See LSA-Const. art. V, § 1;[2]Doerr, 774 So.2d at 134. By giving the commissioner the authority to administer the Code, the legislature certainly did not intend to empower the commissioner to promulgate rules and regulations that would supersede legislation.
The role of the judiciary is to apply the laws as written by the legislature. See LSA-C.C. art. 9. When a law is clear and unambiguous and its application does not lead to absurd consequences, courts are bound to apply the law as written without resort to determining the legislative intent. See LSA-C.C. art. 9. The words of a law must be given their generally prevailing meaning. LSA-C.C. art. 11.
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. LSA-C.C. art.1906. Parties are free to contract for any object that is lawful, possible, and determined or determinable.[3] LSA-C.C. art.1971. Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. LSA-C.C. art. 1983. The words of a contract must be given their generally prevailing meaning. LSA-C.C. art.2047. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. LeBlanc v. Aysenne, 05-0297 (La.1/19/06), 921 So.2d 85, 89. Because there is no ambiguity in the policy in question, its words should be given effect. In the absence of a conflict with a statute or *133 public policy, insurers have the same rights as individuals to limit their liability and impose whatever conditions they desire upon their obligations. Sims v. Mulhearn Funeral Home, Inc., 07-0054 (La.5/22/07), 956 So.2d 583, 595.
This court has previously considered whether an endorsement to an insurance policy, limiting the insurer's liability coverage if liability was due to a statutorily-imposed parental vicarious liability, was against public policy. See Baugh v. Ray, 97-2625 (La.App. 1st Cir.5/5/99), 751 So.2d 888, 888-89. In Baugh, this court found that the law does not mandate insurance coverage for vicarious liability arising from the acts of one's children and that there is no state law or public policy prohibiting a lower limit for parental vicarious liability. Id. I believe, under the facts of this case, that any attempt by the commissioner in issuing Directive Number 152 to establish a contrary public policy constituted an unauthorized exercise of legislative and/or judicial power.
Accordingly, I would affirm the judgment of the trial court granting Allstate's motion for summary judgment and dismissing all claims against the homeowner's insurer, with prejudice.
NOTES
[*] Pettigrew and Hughes, JJ., dissent and would grant a rehearing.
[1] It was later revealed that Joey had a baseball bat concealed in his pants leg for "insurance."
[2] It should be noted that the depositions of the parties in this matter reveal some discrepancy as to who was present and their roles in the battery.
[3] In maintaining Ms. Reinhardt's appeal, this court ruled that although she failed to file an order for appeal within the delay, Ms. Reinhardt nevertheless filed a notice of her intention to seek writs together with a request for a return date order that was signed by the trial court within the delay. In its denial of Allstate's motion, this court cited In Re Howard, 541 So.2d 195, 197 (La. 1989), and ruled that said pleading could be treated as a timely motion for a devolutive appeal.
[4] It should be noted that five months after the issuance of Directive 152, this court issued its opinion in Neuman v. Mauffray, 99-2297 (La. App. 1 Cir. 11/8/00), 771 So.2d 283. In Neuman, 99-2297 at 3-4, 771 So.2d at 285, this court held that an intentional act exclusion in an Allstate homeowner's policy excluded coverage for intentional acts committed by an insured minor in addition to a claim of negligent supervision directed against the parents of said minor. A similar ruling was made in the case of Leslie v. Andrews, 04-2053 (La. App. 4 Cir. 5/25/05), 905 So.2d 368, 372-373, writ denied, 05-1161 (La.5/5/05), 901 So.2d 1077. In both Neuman and Leslie, no issue of Directive 152 was raised by the parties or addressed by the courts; therefore, we find those cases are distinguishable from the case at hand and we decline to follow same.
[1] LSA-Const. art. IV, § 11.
[2] It has long been the law of this land that it is emphatically the province and duty of the judicial branch to say what the law is. The judicial power is vested in Louisiana courts by Article V, Section 1 of the Louisiana Constitution. The separation of powers doctrine is set forth in LSA-Const. art. II, § 2: "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." Thus, unless authorized by the Constitution, the executive branch cannot exercise judicial power. ANR Pipeline Company, 815 So.2d at 183-84. The Department of Insurance is included as part of the executive branch of state government; the commissioner serves as the executive head and chief administrative officer of the Department and is also referred to as the "secretary." See LSA-R.S. 36:4(A)(16), 682, and 685.
[3] Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity. LSA-C.C. art. 7.